**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 19-115 |
| | ) Judge Nora Barry Fischer |
| MICHAEL PHAN, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

I.    INTRODUCTION

In this case, Israeli citizen Michael Phan is charged with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  (Docket No. 6).  Presently before the Court are Phan's Motion to Dismiss the Indictment for Lack of Jurisdiction and Failure to State an Offense and the Government's opposition thereto.  (Docket Nos. 130; 139).  Phan argues that this case should be dismissed because his alleged conduct is beyond the extraterritorial reach of the money laundering conspiracy statute as it involved money laundering outside of the United States.  (Docket Nos. 131; 143; 157).  He believes that the Indictment does not sufficiently allege that he and his co-conspirators engaged in any domestic conduct to support the substantive offenses of promotional or concealment money laundering.  (*Id*.). The Government counters that Phan's Motion is a merits-based inquiry as opposed to a jurisdictional one, the money laundering conspiracy charge is sufficiently pled as it plainly states that the crime took place in the Western District of Pennsylvania and elsewhere and that it will present evidence at trial to prove that his conduct is within the reach of the statutory proscription for money laundering conspiracies. (Docket Nos. 139; 150).

The Motion has been exhaustively briefed as the Court has received and reviewed Phan's Brief in Support, the Government's Response, Phan's Reply, the Government's Sur-Reply, and

1

Phan's Response to the Sur-Reply.  (Docket Nos. 130; 131; 139; 143; 150; 157).  After careful consideration of the parties' positions, and for the following reasons, Phan's Motion [130] is DENIED.

II.    BACKGROUND

A. *Allegations in the Indictment*

As the Court recounted in its Memorandum Opinion upholding the detention order, the Indictment broadly alleges that from 2013 through April 24, 2019, in the Western District of Pennsylvania and elsewhere, Phan conspired with Tal Prihar, darknet marketplace administrators, and others known and unknown to the grand jury to commit the offenses of promotional and concealment money laundering.  (*See* Docket No. 6).  The grand jury avers that Phan and Prihar operated DeepDotWeb, ("DDW"), a website which provided links to darknet marketplaces where dangerous narcotics, firearms, stolen identity and account information, fake passports, malware and other illegal materials were bought and sold by individuals on the dark web and for which the company received approximately $15 million in kickbacks from darknet marketplace administrators.  (*Id*.).  Within DDW, Prihar served as administrator and he registered the domain name, made infrastructure payments and maintained control over the site while Phan ran the technical operations, designing and maintaining the day-to-day operation of DDW.  (*Id*. at ¶ 7).  The grand jury found that although Prihar was residing in Brazil and Phan was living in Israel, they communicated daily so that they could grow the site and push traffic to it in order to facilitate the criminal enterprise and generate significant referral fees.  (*Id*. at ¶ 7).

The Indictment specifically names 10 darknet marketplaces where DDW posted referral links, the types of illegal materials bought and sold in those marketplaces and their respective dates of operation within the time period of the conspiracy, i.e.: AlphaBay Market; Agora Market;

Abraxas Market; Dream Market; Valhalla Market; Hansa Market; TradeRoute Market; Dr. D's; Wall Street Market; and Tochka Market. (*Id*. at ¶¶ 9-20). The grand jury found that DDW maintained accounts and communicated with the administrators in each of these marketplaces. (*Id*. at ¶ 8). As to the users, the Indictment also asserts that Defendants referred hundreds of thousands of users to darknet marketplaces and that "DDW referral links were widely used by users in the Western District of Pennsylvania and elsewhere to access and then create accounts on many darknet marketplaces." (*Id*. at ¶ 6). The Indictment details that the DDW referral links were embedded with information that enabled the marketplaces to pay kickbacks to DDW for each illegal purchase that was made and that the users that DDW referred to the darknet marketplaces completed transactions worth hundreds of millions of dollars. (*Id*. at ¶¶ 5-6, 20). With respect to transactions in the Western District of Pennsylvania that generated kickback payments to DDW, the Indictment specifies that:

- four dozen individuals in this area used DDW referral links to create accounts on AlphaBay market and purchased thousands of dollars of illegal narcotics and other contraband that was shipped here;

- 65 individuals in this area used DDW referral links to create accounts on Hansa Market and purchased illegal narcotics and other contraband that was shipped here or to proxy servers;

- FBI employees located in this District created accounts with Tochka and Wall Street Markets and made purchases of illegal narcotics, ransomware, and compromised credit cards.

(Docket No. 6 at ¶¶ 23-28).

According to the Indictment, the kickback payments for the referrals were initially made by the darknet administrators in cryptocurrency to a bitcoin wallet controlled by DDW, approximately 8,155 bitcoin was transferred to this wallet in a series of more than 40,000 deposits; the funds were then withdrawn from the DDW wallet in over 2,700 separate transactions; and, the

value of the bitcoin at that time was approximately $15,489,415.00. (*Id*. at ¶¶ 21-22). After being withdrawn from the DDW wallet, Defendants allegedly moved the funds in a series of transactions through various accounts held in their own names and the names of numerous shell companies they had established at virtual exchanges and traditional banks for the purposes of concealing their illicit activities and to protect their criminal enterprise and the illegal proceeds it generated. (*Id*. at ¶¶ 29-31). The Indictment's forfeiture allegations seek the contents of virtual currency accounts at OKCoin, Kraken and Bitpay; a Paypal.com account; and bank accounts at Baltikums Bank in Latvia, TBC Bank in Georgia, and First International Bank of Israel in Israel; and, to impose a forfeiture money judgment against Defendants in the above amount, i.e., $15,489,415.00 in U.S. currency. (*Id*. at ¶ 34).

### B. Relevant Procedural History

The Court previously set forth the procedural history of this matter and the related case against Prihar in its Memorandum Opinion dated March 4, 2026 denying Defendant's motion to revoke the detention order. (Docket No. 148; 149). That decision was affirmed by the U.S. Court of Appeals for the Third Circuit in an Order dated April 17, 2026. (Docket No. 160). As such, the Court focuses on the procedural history relevant to the instant motion.

Phan submitted his Motion to Dismiss and Memorandum in Support on December 30, 2025. (Docket Nos. 130; 131). Although he did not attach any exhibits to his Motion, he relies, in part, on the affidavit of Special Agent Eric Yingling referenced in the bond proceedings. (*See* Docket No. 131 at 17 (citing Yingling Affidavit, Mag Nos. 19-1109-24 ¶ 28)). The parties jointly requested an extension of time for the Government to file its Response, which was thereafter received on February 3, 2026. (Docket No. 139). The Government likewise relies upon an affidavit in support of a separate warrant seizing the domain name of DDW and proffers additional

information concerning the Defendants' alleged use of United States-based BTC-e to convert currency from bitcoin to fiat currency. (Docket No. 139 at 2, n.2, 4, n.4). Phan filed his Reply on February 18, 2026 attaching emails and other correspondence from prosecutors involved in this matter. (Docket No. 143). After receiving an extension of time from the Court, the Government submitted its Sur-Reply on March 9, 2026. (Docket No. 150). Subsequently, the Court granted Phan leave to file a further Response exceeding the typical page limitations and he did so on April 6, 2026. (Docket Nos. 151-152; 157). As the briefing has now concluded, and the Court does not believe that oral argument is necessary given the issues presented, Phan's Motion is ripe for disposition.

III.    LEGAL STANDARDS

Motions to dismiss are governed by Rule 12 of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 12. Specifically, Rule 12(b)(2)(B) provides that "a motion that the court lacks jurisdiction may be made at any time while the case is pending." Fed. R. Civ. P. 12(b)(2). Rule 12(b)(3)(B)(v) states that a pretrial motion may be filed asserting "a defect in the indictment or information, including, […] failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). The requirements of the contents of an indictment are set forth in Rule 7 of the Federal Rules of Criminal Procedure. Fed. R. Crim. P. 7. Pursuant to Rule 7(c)(1), an indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). The purpose of the promulgation of Rule 7 was to abolish detailed pleading requirements and the technicalities previously required in criminal pleading. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007)); *see also United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011). "While detailed

allegations might well have been required under common-law pleading rules, they surely are not contemplated by Rule 7(c)(1)." *Resendiz-Ponce*, 549 U.S. at 110.

"'[A]n indictment is facially sufficient if it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" *United States v. Fattah*, 858 F.3d 801, 814 (3d Cir. 2017), *as amended* (June 12, 2017) (quoting *United States v. Stevenson*, 832 F.3d 412, 423 (3d Cir. 2016)) (further quotations omitted).  However, the Court of Appeals has "eschewed any approach that insists upon magic words that perfectly mirror the statutory language of the charged offense: '[f]ailure to allege the statutory elements will not be fatal provided that alternative language is used or that the essential elements are charged in the indictment by necessary implication.'" *Stevenson*, 832 F.3d at 424 (quoting *Gov't of V.I. v. Moolenaar*, 133 F.3d 246, 249 (3d Cir. 1998)). "Because criminal indictments are to be read as a whole and interpreted in a common sense manner, the mere fact that a term can have different meanings depending on context […] does not render it unusable in an indictment." *United States v. Mattia*, 157 F.4th 305, 312 (3d Cir. 2025) (internal quotation and citation omitted).

IV.    DISCUSSION

As noted, Phan contends that his alleged conduct in this money laundering conspiracy is beyond the extraterritorial reach of 18 U.S.C. § 1956(f) and that the Indictment should be dismissed under either Rule 12(b)(2)(B) for lack of jurisdiction or Rule 12(b)(3)(B)(v) for failure to state an offense.  (Docket Nos. 131, 143; 157).  The Government responds that the Indictment should not be dismissed and that it will present more than sufficient evidence at trial to show that Phan's conduct is within the extraterritorial reach of the money laundering statutes.   (Docket Nos. 139;

150).  Having considered the parties' positions, the Court agrees with the Government and will deny Phan's Motion to Dismiss.  The Court briefly outlines its reasons, starting with the jurisdictional arguments.

### A.  Motion to Dismiss for Lack of Jurisdiction

In this Court's estimation, there is subject matter jurisdiction over the grand jury's charge that Phan allegedly committed the offense of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and the prevailing caselaw makes clear that his extraterritoriality challenge to the Indictment does not undermine the Court's ability to hear the case.  The Court reaches this decision for several reasons.

Initially, the subject matter jurisdiction of district courts over federal criminal cases is governed by 18 U.S.C. § 3231 which broadly provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231.  As the Supreme Court has explained, "[v]ia its sweeping language, § 3231 opens federal district courts to the full range of federal prosecutions for violations of federal criminal law." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 268-69 (2023); *cf. In re Grand Jury Subpoena*, 912 F.3d 623, 628 (D.C. Cir. 2019) ("It is hard to imagine a clearer textual grant of subject-matter jurisdiction. 'All' means 'all'; the provision contains no carve-out for criminal process served on foreign defendants."). Further, an indictment charging a foreign defendant with a violation of federal criminal law is enough to establish subject matter jurisdiction in this Court.  *Turkiye Halk Bankasi A.S.*, 598 U.S. at 268-69 ("By its terms, § 3231 plainly encompasses [the foreign defendant's] alleged criminal offenses, which were 'against the laws of the United States.'"); *see also United States v. Fonseca*, 49 F.4th 1, 11 (1st Cir. 2022) ("Fonseca claims that the district court lacked subject matter jurisdiction over the conspiracy

charge because he never entered the United States during the conspiracy and did not intend for his actions to have an impact in the United States. This argument has no merit."). In light of these principles, this Court has subject matter jurisdiction over the charge against Phan because he is charged with violating federal law, i.e., money laundering conspiracy in violation of 18 U.S.C. § 1956(h). *Cf. United States v. Ojedokun*, 16 F.4th 1091, 1105 (4th Cir. 2021) (quoting *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 136 S. Ct. 2090, 2101 (2016)) ("we conclude that § 1956(f) sets out a 'clear, affirmative indication' that it affords extraterritorial jurisdiction over § 1956(h) money laundering conspiracy charges"); *see also United States v. Iossifov*, 45 F.4th 899, 914 (6th Cir. 2022) ("The text of 18 U.S.C. § 1956 demonstrates Congress' clear and specific intent to provide for the extraterritorial application of the statute in cases like this one, where there is significant evidence that a defendant collaborated in a money laundering scheme that took place, at least in part, in the United States").

Next, following Supreme Court authority, Courts have recognized that challenges to the extraterritorial reach of a statute concern the merits of a case and not the Court's subject matter jurisdiction. *See e.g., Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010); *United States v. Botsvynyuk*, 552 F. App'x 178, 182 (3d Cir. 2014) (quoting *Morrison*, 561 U.S. at 254) ("Omelyan's arguments pertaining to the fact that the acts of extortion that occurred within five years of the indictment occurred outside the United States does not go the question of whether the District Court had subject matter jurisdiction, but instead 'is a merits question.'"); *United States v. Rafoi*, 60 F.4th 982, 992–93 (5th Cir. 2023) ("whether a statute reaches extraterritorial acts is not a challenge to the district court's subject-matter jurisdiction."). The Supreme Court has also held that "defects in an indictment do not deprive a court of its power to adjudicate a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002). The U.S. Court of Appeals for the Third Circuit has

therefore reasoned that the dismissal of an indictment is subject to harmless error review such that proper instructions of the essential elements of a crime to a petit jury at trial suffice to cure any defect by the grand jury allegedly not finding the lesser standard of probable cause. *See United States v. Sayon*, No. CR 20-325, 2023 WL 3645684, at *5 (W.D. Pa. May 25, 2023) (citing *Stevenson*, 832 F.3d at 428); *see also United States v. Gillette*, 738 F.3d 63, 75 (3d Cir. 2013) ("Neither insufficiency of the evidence nor failure to state an offense means that the charged conduct was outside the authority of the District Court to adjudicate.").

All told, since the Court has subject matter jurisdiction over this case and Phan's extraterritorial arguments necessarily concern the merits of the charge and are non-jurisdictional, his Motion seeking to dismiss the charge for lack of jurisdiction under Rule 12(b)(2)(B) is denied. *See Rafoi*, 60 F.4th at 992-93; *see also Botsvynyuk*, 552 F. App'x at 182. The Court further evaluates his extraterritoriality position in the context of his motion to dismiss for failure to state an offense below.

### B. *Motion to Dismiss for Failure to State an Offense*

It is also this Court's opinion that Phan's Motion must be denied to the extent that he claims that the money laundering conspiracy charge should be dismissed because the Indictment does not allege a viable domestic object offense. (*See* Docket Nos. 131; 143; 157). Although Phan's arguments are multi-faceted, his Motion must be denied for two independent reasons, i.e., he does not adhere to the standards governing Rule 12(b)(3)(B)(v) motions as he relies upon matters outside the Indictment and assumes facts not in the Indictment in support of his position, and the Indictment is otherwise more than sufficient to meet the pleading requirements to state that he committed the offense of money laundering conspiracy in the Western District of Pennsylvania at this stage of the proceedings.

As to the former point, it is well established that "a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence," and there is no corollary to the civil summary judgment practice in federal criminal law. *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000). Again, the Court is limited to reviewing the four corners of the Indictment on a motion to dismiss for failure to state an offense while the sufficiency of the evidence is tested at the conclusion of Government's case at trial on a motion for judgment of acquittal. *See Id*. ("[t]he government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29.").

Here, Phan assumes numerous facts and relies upon affidavits and evidence which are not contained in the Indictment in his effort to seek its dismissal. (*See e.g.,* Docket No. 131 at 3, n.1 (no evidence supporting allegations that Phan handled day-to-day operations at detention hearing and Rule 16 discovery); 131 at 7 (DDW wallet identified in the Indictment is a "foreign cryptocurrency wallet"); 131 at 23 (citing affidavit of Special Agent Yingling and claiming that DDW users' purchases were made in cryptocurrency using hot wallets and escrow services that he believes took place abroad); 143 at 15 (DDW "was a legitimate business that published news and generated ad revenue"); 143 at 2, 20-21 (asserting that bitcoin is intangible property that does not exist in accounts or wallets and is only situated in the domicile of the owner); 143-1:143-3 (attached email and correspondence from prosecutors). The Government follows suit in its briefs in opposition, referencing, among other things, affidavits, plea agreements in other cases, admissions by the defense in the bond proceedings and extensive proffers of evidence supporting its case against Phan, including activities undertaken by conspirators within the United States. (*See* Docket No. 139 at 2, n.2 (noting activities of conspirators to U.S. companies including that

DDW website was hosted by GoDaddy; paid for using a PayPal account; and the traffic to the domain was managed through Cloudfare); *id*. at 5 (Phan traveled to and spent time in the United States during the time of the conspiracy); *id*. at 4, 13, 16 (DDW used virtual currency exchange BTC-e which maintained servers in the U.S. in order to convert bitcoin to fiat currency); *id*. at 10, n.5 (noting that DDW website was in English and targeted American visitors to the site); and Docket No. 150 at 2, 8, 11-12 (noting DDW use of BTC-e in virtual currency transactions)).  Since the Court is unable to resolve these evidentiary disputes between the parties on a motion to dismiss for failure to state an offense, Phan's Motion must be denied to the extent that he relies on evidence and proffers outside of the Indictment.  *See DeLaurentis*, 230 F.3d at 660.  Hence, the Court focuses on Phan's contentions as to the facial sufficiency of the Indictment.

Without including such extraneous matters purporting to demonstrate that all of the money laundering activities took place abroad, Phan makes three essential claims: first, that the Court should reject the allegations that the conspiracy took place in the Western District of Pennsylvania as "boilerplate"; second, that the conspiracy charge should be dismissed because the Government has purportedly failed to sufficiently allege that he engaged in a viable domestic money laundering offense; and third, since the Indictment states that he is a non-citizen residing in Israel at the time of the conspiracy and identifies banks outside of the United States to which the ill-gotten gains of the conspiracy were ultimately deposited, the allegations are insufficient to meet the requirements of § 1956(f).  (*See generally* Docket Nos. 131; 143; 157).  However, these contentions lack merit for several reasons.

First, the Court cannot ignore the Indictment's numerous allegations that the conspiracy and overt acts in furtherance of same took place in the Western District of Pennsylvania and must accept those allegations as true for purposes of the motion to dismiss under Rule 12(b)(3)(B)(v).

*See* Docket No. 6 at ¶ 2 ("Beginning in and around October 2013, and continuing through the date of this Indictment, in the Western District of Pennsylvania and elsewhere, the defendants TAJ PRIHAR and MICHAEL PHAN, did knowingly, intentionally, and unlawfully conspire together with each other, with darknet marketplace administrators, and with other persons known and unknown to the grand jury to commit certain offenses against the United States […]"); *see also id*. at ¶¶ 6, 20, 23-28.  As the U.S. Court of Appeals for the Third Circuit found in *United States v. Menendez*, 831 F.3d 155, 175-76 (3d Cir. 2016), the Court must accept the allegations concerning the location of the crime as true, regardless of any uncertainty as to how the Government would prove them at trial.  *Id*. (citing *Bergrin*, 650 F.3d at 270 n.8).  Stated differently, in this Circuit, an Indictment is sufficient if it alleges the timeframe and geographical area of the conspiracy and informs the defendant of the crime alleged such that it is sufficient to permit him to plead double jeopardy in a subsequent prosecution.  *See e.g.*, *United States v. Johnstone*, 856 F.2d 539, 541-42 (3d Cir. 1988) ("the indictment specified both the time frame and the geographical area of the conspiracy"); *United States v. Bujese*, 371 F.2d 120, 124 (3d Cir. 1967) (citation omitted) ("An indictment alleging commission of an offense within the jurisdiction of the trial court, meets the required certainty of place of commission.").  Those requirements are more than satisfied here as the Indictment plainly states that the unlawful money laundering conspiracy took place in the Western District of Pennsylvania and elsewhere and the Indictment will not be dismissed on this basis. *See* Docket No. 6 at ¶¶ 2, 6, 20, 23-28.

Second, the Court cannot dismiss the Indictment because it allegedly fails to state that Phan and others committed a viable domestic money laundering offense.  To reiterate, Phan is charged with a single count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) but he is not charged with a substantive money laundering offense.  (Docket No. 6).  The essential elements

12

of money laundering conspiracy include that: two or more people entered into a conspiracy to launder money; the defendant knew the purpose of the conspiracy; and the defendant deliberately joined the conspiracy. (Docket No. 7 at 2 (citing *United States v. Navarro*, 145 F.3d 580, 593 (3d Cir. 1993); 18 U.S.C. § 1956(h); *Whitfield v. United States*, 543 U.S. 209 (2005)). As the Government points out, the Supreme Court has held that "[b]ecause the text of § 1956(h) does not expressly make the commission of an overt act an element of the conspiracy offense, the Government need not prove an overt act to obtain a conviction." *Whitfield*, 543 U.S. at 214. The Supreme Court further recognized that § 1956(i) is not an exclusive venue provision and that a money laundering conspiracy case may be tried in: the district where the unlawful conspiratorial agreement was reached; "the district in which venue would lie if the completed substantive money laundering offense had been accomplished"; or, "any district in which an overt act in furtherance of the conspiracy was committed," even though "an overt act is not a required element of the conspiracy offense." *Id*. at 218 (emphases omitted); *see Ojedokun*, 16 F.4th at 1107 (citing *Whitfield*, 543 U.S. at 217-218) ("venue in a § 1956(h) case may be had in any district where an act in furtherance of the conspiracy took place" and noting that overt acts taking place in the United States were sufficient to show that the statute applied to defendant's conduct in Nigeria); *see also Iossifov*, 45 F.4th at 911-12 (upholding venue in case involving foreign defendant where evidence showed that acts in furtherance of the money laundering conspiracy took place in the Eastern District of Kentucky).

In addition, it is well settled in the Third Circuit that "[c]onspiracy indictments need not allege all of the elements of the offense which the defendants are accused of conspiring to commit." *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979); *see also United States v. Manfredi*, 628 F.Supp.2d 608, 624-25 (W.D. Pa. Jan. 21, 2009). The Court of Appeals has further instructed:

> [t]o be legally sufficient, a conspiracy count in an indictment need only set forth "the agreement and specific intent to commit an unlawful act, and when required by statute, an overt act." A conspiracy indictment need not allege every element of the underlying offense, but need only put defendants on notice that they are being charged with a conspiracy to commit the underlying substantive offense.

*United States v. Werme*, 939 F.2d 108, 112 (3d Cir. 1991) (quoting *Wander*, 601 F.2d at 1259). This is because, "[i]n a conspiracy count, the conspiracy is the gist of the offense ... [and the indictment] need not plead the substantive offense letter-perfect because the purpose of the conspiracy may have been accomplished even though such activity fell short of completing a substantive offense." *Id*. (quoting *United States v. Knox Coal Co.*, 347 F.2d 33, 38 (1965)). In other words, a defendant cannot obtain dismissal of a conspiracy indictment by pointing to its allegations of overt acts and claiming that such allegations do not sufficiently state all of the elements of a completed substantive offense. *See Wander*, 601 F.2d at 1259-60 ("Count I of the indictment specifically avers an agreement between the defendant and a specific intent to commit an unlawful act. It further avers a number of overt acts in furtherance of the objectives of the conspiracy. It need not allege the essential elements of the underlying offense which is the object of the conspiracy, a requirement of an indictment charging a substantive offense."). Therefore, Phan's position that the Indictment should be dismissed because it purportedly does not allege that he committed a domestic money laundering offense is overruled.

In any event, having reviewed the allegations in the Indictment under the legal standards noted above, the Court holds that the Indictment provides adequate detail to support all of the essential elements of the money laundering conspiracy charge, sufficiently apprises defendant of what he must be prepared to meet to defend the charge at trial and, allows him to raise the defense of double jeopardy in a subsequent prosecution. *See Fattah*, 858 F.3d at 814. Again, the

14

Indictment alleges that from 2013 through April 24, 2019, in the Western District of Pennsylvania and elsewhere, Phan; Prihar; darknet marketplace administrators; and other persons known and unknown to the grand jury knowingly conspired to commit the offenses of promotional and concealment money laundering.  (Docket No. 6 at ¶ 2).  The Indictment details that DDW referral links were used in the Western District of Pennsylvania and elsewhere to access and create accounts on the darknet marketplaces; such users made hundreds of millions of dollars of purchases of contraband from darknet vendors; the referral links enabled the darknet marketplace administrators to pay Phan and Prihar kickbacks or referral fees for each transaction by these users and the darknet administrators did, in fact, pay Phan and Prihar millions in kickbacks or referral fees.  (*Id*. at ¶¶ 6, 20, 23-28).  The Indictment also states that Phan and Prihar promoted and grew the DDW site to drive additional traffic to it and increase their revenue; received the kickback payments in a bitcoin wallet they controlled; and moved their ill-gotten gains in thousands of transactions through virtual currency exchanges and bank accounts held in their own names and/or the names of various shell companies that they owned in an effort to conceal the true nature of the funds as proceeds of the illicit activities.  (*Id*. at ¶¶ 7-20, 29-31).

While the Indictment does not specifically detail the locations of each of the co-conspirators or the thousands of transactions that took place, a common sense and holistic review of the allegations make clear that the conspiracy involved a scheme for DDW to generate revenue from sales of contraband on darknet marketplaces by users in the Western District and elsewhere; (necessarily including other users in the U.S.); the payment of kickbacks to Defendants for referring these users to the darknet marketplaces; and the Defendants then laundering the funds out of the U.S. to accounts they controlled including the accounts at Baltikums Bank in Latvia, First International Bank of Israel in Israel and TBC Bank in Georgia.  *Cf. Mattia*, 157 F.4th at 312

15

("The Superseding Indictment described the essential facts of Mattia's alleged scheme, and therefore complies with Rule 7(c), even though it did not detail the specific timing and circumstances of Dr. Agresti's participation in it."). In addition to funds held in those bank accounts abroad, the Indictment also asserts that a PayPal.com account and virtual currency accounts at OKCoin, Kraken and BitPay were involved in the offense and the Government seeks forfeiture of same. (Docket No. 6 at ¶ 34). The Indictment does not specify the location of the PayPal.com account, the virtual currency accounts or others that may have been used in the scheme, but the Court's common sense reading of the totality of the accusations in the Indictment simply does not foreclose a finding that financial institutions and/or virtual currency exchanges based in the United States were used in furtherance of the conspiracy. (*See id*. at ¶¶ 1-36). To the contrary, the Indictment necessarily implies that the U.S. financial system was used as it explains that illegal proceeds originated from transactions in the Western District of Pennsylvania and elsewhere which were then moved by Defendants in a series of transactions to various accounts, including those that are now subject to forfeiture. *See Stevenson*, 832 F.3d at 424.

Taken together, the allegations in the Indictment are enough to put Phan on notice of the charge, permit him to start to build his defense and provide more than sufficient factual orientation for him to plead double jeopardy in the event of a subsequent prosecution. *See Fattah*, 858 F.3d at 814.

Third, and finally, the Court also denies Phan's Motion insofar as he maintains that the Indictment fails to state an offense under Rule 12(b)(3)(B)(v) because the allegations therein are beyond the extraterritorial reach of the money laundering conspiracy statute. (*See* Docket Nos. 131; 143; 157). The parties agree that the limitations set forth in § 1956(f) apply to money

laundering conspiracy charges. (*See* Docket Nos. 131 at 7-8; 139 at 6-7). Section 1956(f) provides that:

> (f) There is extraterritorial jurisdiction over the conduct prohibited by this section if--
>
>> (1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and
>>
>> (2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.

18 U.S.C. § 1956(f). As the Court has already found above, and after once again taking the averments of the Indictment as true, Phan is a citizen of Israel but according to the grand jury, he knowingly joined a money laundering conspiracy which took place, in part, in the Western District of Pennsylvania and involved the laundering of millions of dollars in kickbacks that Defendants received from darknet marketplace administrators for the DDW referrals. (*See* Docket No. 6 at ¶¶ 1-32). Thus, the statutory requirements of § 1956(f) that the offense take place, in part, in the United States and involve more than $10,000 in laundering transactions are sufficiently pled in the instant Indictment. *See e.g.,*18 U.S.C. § 1956(f); *Ojedokun*, 16 F.4th at 1107. Given such allegations, there is no basis for dismissal for failure to state an offense. *See Fattah*, 858 F.3d at 814.

V.     CONCLUSION

Based on the foregoing, Phan's Motion [130] is DENIED as he has failed to demonstrate that the Indictment should be dismissed for lack of jurisdiction or failure to state an offense. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

17

Dated:          May 20, 2026

cm/ecf:         All counsel of record